UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VW CREDIT LEASING LTD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE CITY OF SAN MATEO, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-02884-DMR<br><br>**ORDER ON CITY OF SAN MATEO'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

In this action, Plaintiff VW Credit Leasing LTD ("VWCL") challenges Defendant City of San Mateo's ("San Mateo") alleged practice of turning over control of seized vehicles to private tow companies, including Defendant Red Line Towing ("Red Line"), without providing due process. San Mateo now moves to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 18.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

## I.   BACKGROUND

VWCL makes the following allegations in the first amended complaint ("FAC"), all of which are taken as true for purposes of the motion to dismiss.[1] VWCL is the titled owner of a 2020 Volkswagen bearing VIN 3VWCB7BUXLM068420 (the "vehicle"). It was a party to a vehicle lease agreement with Anna Paley. [Docket No. 9 (FAC) ¶¶ 7, 10, 11, Exs. A, B.] Starting in May 2021, Paley failed to make her monthly car payments. As a result, VWCL became entitled to immediate possession of the vehicle under the terms of the lease agreement. FAC ¶¶ 12, 13.

On September 15, 2021, San Mateo took custody of the vehicle and instructed Red Line to

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

tow it from the roadway, store it, and "not to release it without prior approval from San Mateo." *Id*. at ¶ 16. VWCL alleges that Defendants' seizure of the vehicle was without a warrant and "was unaccompanied by any legitimate exception to the warrant requirement." *Id*. at ¶¶ 49, 50. It further alleges that "to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized." *Id*. at ¶ 50.

VWCL alleges that it first discovered that the vehicle had been impounded on November 4, 2021, when it received a "Notice of Stored Vehicle" advising it of charges for storage, towing, and a title search. *Id*. at ¶ 18, Ex. C. The Notice of Stored Vehicle lists total charges of $1,510 and states, "you are the last Legal Owner of record for this vehicle. Per the requirements of the California Vehicle Code and Civil Code, you are hereby notified that the above described vehicle has been placed in storage. Please contact us at the address shown above and pay the charges if you intend to reclaim this vehicle." *Id*.

When VWCL contacted Red Line to recover the vehicle, Red Line demanded payment of $4,400 in towing and storage charges before it would release the vehicle to VWCL and claimed a lien on the vehicle for the outstanding charges. FAC ¶¶ 19-21. Red Line claimed that it was not permitted to release the vehicle "unless or until San Mateo authorized Red Line to do so." *Id*. at ¶ 22. VWCL did not pay the fees that Red Line demanded. It alleges upon information and belief that Red Line sold the vehicle and kept the sale proceeds. *Id*. at ¶¶ 24, 25. San Mateo did not compensate VWCL for the extinguishment of its property rights in the vehicle. *Id*. at ¶ 72. Further, "[n]either San Mateo nor Red Line provided VWCL an opportunity to be heard in relation to either Defendants' actions in relation to the Vehicle in any venue at any time." *Id*. at ¶ 59.

VWCL alleges that San Mateo benefited from Red Line's detention of the vehicle "in that San Mateo obtained Red Line's impound storage services, as well as Red Line's towing services to clear the roadway, with no payment (or reduced payment) of money from San Mateo to Red Line. *Id*. at ¶ 26. VWCL further alleges that "[t]o the extent San Mateo or Red Line seek to rely on any California State law or local ordinance to justify their conduct, these laws are

unconstitutional as applied to the circumstances." *Id.* at ¶ 23.

VWCL alleges that Defendants' regular policy and custom is to not obtain a warrant for their actions, including initially seizing a vehicle; turning over possession of a vehicle to Red Line; the decision to continue to detain vehicles after the initial reason for the seizure has passed; the decision by Red Line to assert a possessory lien in vehicles and then terminate all property interests in vehicles; and the eventual sale of vehicles. *Id.* at ¶ 39. It alleges that even if the initial warrantless seizure of vehicles is pursuant to an valid exception to the Fourth Amendment's warrant requirement, Defendants' "subsequent actions render the seizures unreasonable in their manner of execution[.]" *Id.* at ¶ 40. Additionally, VWCL alleges that Defendants' regular policy and custom is to not provide any form of constitutionally adequate notice or any hearing whatsoever with respect to the foregoing actions. *Id.* at ¶ 41. According to VWCL, San Mateo benefits from these actions "by avoiding the costs of preserving the seized vehicles and towing services by permitting the towing company to keep the vehicle as compensation," while Red Line "benefits by using its control over the vehicle (created under mantle of authority from San Mateo) to profit by conditioning release of the vehicle upon payment of money . . . or by selling the vehicle in the absence of payment." *Id.* at ¶ 2.

VWCL asserts the following claims for relief: 1) a 42 U.S.C. § 1983 claim for unreasonable seizure in violation of the Fourth Amendment against both Defendants; 2) a section 1983 claim for deprivation of property without due process in violation of the Fourteenth Amendment against both Defendants; 3) a section 1983 claim for taking of property without just compensation in violation of the Fifth Amendment against San Mateo; 4) declaratory relief against both Defendants; 5) replevin against Red Line; 6) conversion against Red Line; and 7) tortious interference with contractual relations and/or prospective economic advantage against Red Line.

San Mateo now moves to dismiss all of VWCL's claims against it (claims one through four).

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

1    When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
2    of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a
3    claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual
4    matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*,
5    622 F.3d 1035, 1041 (9th Cir. 2010) (quotation marks omitted) (quoting *Navarro v. Block*, 250
6    F.3d 729, 732 (9th Cir. 2001)) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A claim
7    has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the
8    reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
9    678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and
10   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*
11   *Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Taken together, *Iqbal* and *Twombly* require well-
12   pleaded facts, not legal conclusions, that "plausibly give rise to an entitlement to relief. *Whitaker*
13   *v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quotations and internal citations
14   omitted).

15   As a general rule, a court may not consider "any material beyond the pleadings" when
16   ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)
17   (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of
18   public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir.
19   1986)), and may also consider "documents whose contents are alleged in a complaint and whose
20   authenticity no party questions, but which are not physically attached to the pleading," without
21   converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch*
22   *v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at
23   1125-26. The court need not accept as true allegations that contradict facts which may be
24   judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

25   **III.    REQUEST FOR JUDICIAL NOTICE**
26   San Mateo asks the court to take judicial notice of a California Highway Patrol Vehicle
27   Report dated September 15, 2021. It asserts that the document memorializes the San Mateo Police
28   Department's "investigation of the report of a stolen vehicle and the recovery of that vehicle." It

4

1   contends that the subject of the Vehicle Report is the same vehicle at issue in the FAC. [Docket
2   No. 18-1 (Def.'s Request for Judicial Notice ("RJN"); O'Keefe Decl. Aug. 22, 2023 ¶ 5, Ex. A
3   (Vehicle Report).]

4         Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of "an
5   adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*,
6   899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A fact is "not subject to
7   reasonable dispute" if it is "generally known," or "can be accurately and readily determined from
8   sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). VWCL does
9   not dispute the authenticity of the Vehicle Report and does not object to the court's taking judicial
10  notice of the document. *See* Opp'n 3 n.1. The court will take judicial notice of the existence of
11  the Vehicle Report as a "matter[ ] of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689
12  (9th Cir. 2001). However, "[j]ust because [a] document itself is susceptible to judicial notice does
13  not mean that every assertion of fact within that document is judicially noticeable for its truth."
14  *Khoja*, 899 F.3d at 999. If a court takes judicial notice of a document, it must identify the specific
15  fact or facts it is noticing from the document. *Id.*

16        San Mateo's RJN does not identify which facts in the Vehicle Report are judicially
17  noticeable. It appears to seek judicial notice that 1) the vehicle "was recovered by the San Mateo
18  Police Department at 112 W 36th Ave, San Mateo as a stolen vehicle" and 2) that the vehicle was
19  stored pursuant to California Vehicle Code section 22651(c).[2] *See* Mot. 2, 7. San Mateo offers no
20  authority that the court may judicially notice these facts *for their truth*, as opposed to judicial
21  notice that statements that the vehicle was stolen and stored under California Vehicle Code section
22  22651(c) appear in the Vehicle Report. *See Lee*, 250 F.3d at 689 (it is inappropriate to "take
23  judicial notice of a fact that is 'subject to reasonable dispute'" (quoting Fed. R. Evid. 201(b))).
24  Accordingly, the court takes judicial notice of the existence of the Vehicle Report but does not

---

[2] Pursuant to California Vehicle Code section 22651(c), a peace officer "may remove a vehicle located within the territorial limits in which the officer . . . may act . . . [i]f a vehicle is found upon a highway or public land and a report has previously been made that the vehicle is stolen or a complaint has been filed and a warrant thereon is issued charging that the vehicle was embezzled."

5

accept as true the facts alleged in the document itself. *See, e.g., Beckway v. DeShong*, 717 F. Supp. 2d 908, 912 n.1 (N.D. Cal. 2010), *on reconsideration in part* (July 28, 2010) (taking judicial notice of the existence of documents from criminal proceeding, including transcript and police reports, but declining to "accept as true the facts alleged in the documents.").

## IV. DISCUSSION

### A. Constitutional Claims

Claims one through three assert violations of the Fourth, Fourteenth, and Fifth Amendments to the United States Constitution. San Mateo argues that the FAC does not plausibly allege the existence of a municipal policy, custom, or practice under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), or that any such policy, custom, or practice caused VWCL's deprivation of rights in the vehicle. Mot. 6. It further contends that all three constitutional claims fail as a matter of law. *Id*. at 7-12.

#### 1. *Monell* Claim

##### a. Legal Standards for *Monell* Liability

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted). To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

*Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

### b. Analysis

According to San Mateo, "no City policy or custom has been identified and no specific facts regarding inaction or inaction have been alleged against the City." Instead, it argues, the FAC relies on "limited, conclusory assertions that there were 'regular policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.'" Mot. 6 (quoting FAC ¶ 28).

A complaint asserting liability under *Monell* "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Here, the FAC alleges that San Mateo has a policy and practice of "summarily turning over control of seized vehicles to the private company that towed and stored the vehicle when San Mateo seized it," failing to "return those vehicles to a person with a preexisting property interest when the justification for San Mateo's seizure has passed," and allowing tow companies "to lien and/or sell the vehicle as a means to cover the costs of towing and storage," instead of following a "constitutionally appropriate procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing." FAC ¶¶ 1, 32. It offers additional factual allegations regarding San Mateo's alleged policy and practice, *see id.* at ¶¶ 28-42, including the following allegations at paragraphs 39 and 41:

> 39. It is San Mateo's and Red Line's regular policy and custom, in the course of the above-described conduct, to not obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):
>
> A.      The initial seizure of a vehicle;
> B.      The turnover of possession of a vehicle to Red Line;
> C.      The decision by San Mateo and/or Red Line to continue to detain vehicles after the initial reason for the seizure has passed;
> D.      The decision of Red Line to assert an *ex parte* possessory lien

7

|   |   |   |
|---|---|---|
|   | E. | Red Line acting to acquire ownership by terminating all property interests in vehicles; and |
|   | F. | The eventual sale of vehicles. |

41. It is also San Mateo's and Red Line's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

|   |   |   |
|---|---|---|
|   | A. | The initial seizure of a vehicle; |
|   | B. | The turnover of possession of a vehicle to Red Line; |
|   | C. | The decision by San Mateo and/or Red Line to continue to detain vehicles after the initial reason for the seizure has passed; |
|   | D. | The decision of Red Line to assert an *ex parte* possessory lien and the amount of that lien; |
|   | E. | Red Line acting to acquire ownership by terminating all property interests in vehicles; and |
|   | F. | The eventual sale of vehicles. |

*Id*. at ¶¶ 39, 41.

The FAC also alleges that Defendants' conduct with respect to VWCL and the vehicle "comported with" these "regular policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances." *Id*. at ¶ 28. These allegations specify the particular policies, customs, or practices pursuant to which VWCL alleges it was injured and are sufficient to "give fair notice and to enable the opposing party to defend itself effectively." *AE*, 666 F.3d at 637. Moreover, the court finds that the FAC plausibly alleges that VWCL's constitutional claims arose as a result of the alleged policies, customs, or practices; i.e., the alleged policies, customs, or practices were "the moving force behind" VWCL's alleged constitutional injuries. *See Dougherty*, 654 F.3d at 900; *AE*, 666 F.3d at 637 ("the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." (quoting *Starr*, 652 F.3d at 1216)).

Before turning to whether the FAC states constitutional claims, the court addresses San Mateo's argument that VWCL has not stated constitutional claims because San Mateo acted pursuant to state law in having the vehicle removed from its location and impounded. *See* Mot. 7-8. In relevant part, it cites California Vehicle Code section 22653(a), which authorizes a peace

8

1  officer to "remove a vehicle from private property located within the territorial limits in which the
2  officer is empowered to act, when a report has previously been made that the vehicle has been
3  stolen or a complaint has been filed and a warrant thereon issued charging that the vehicle has
4  been embezzled." It also cites a statutory provision authorizing a city to "adopt a regulation,
5  ordinance, or resolution establishing procedures for the release of properly impounded vehicles to
6  the registered owner . . . and for the imposition of a charge equal to its administrative costs
7  relating to the removal, impound, storage, or release of the vehicles to the registered owner or to
8  the agent of the registered owner," California Vehicle Code section 22850.5(a), as well as other
9  provisions regarding the removal and storage of vehicles and establishment of a lien by the keeper
10 of the vehicle. Mot. 7-8 (citing Cal. Veh. Code §§ 22850, 22851(a)(1), Cal. Civ. Code §§ 3067-
11 3074). San Mateo contends that it "adhered to the requirements of California Vehicle Code in
12 removing the stolen Vehicle from private property" and thus did not violate VWCL's
13 constitutional rights. *Id*. at 7.

14 This argument fails. As discussed in connection with San Mateo's RJN, whether the
15 vehicle was reported stolen and removed pursuant to the authority cited in the Vehicle Report are
16 facts outside the pleadings that may not be considered on this motion. Moreover, whether San
17 Mateo complied with state law regarding the seizure, impoundment, and sale of the vehicle is not a
18 clear defense to VWCL's constitutional claims. With respect to the Fourth Amendment claim, the
19 Ninth Circuit has explained that "the decision to impound [a vehicle] pursuant to the authority of a
20 city ordinance and state statute does not, in and of itself, determine the reasonableness of the
21 seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment."
22 *Miranda v. City of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005). In such circumstances, "[t]he
23 question . . . upon review of a state-approved search or seizure is not whether the search (or
24 seizure) was authorized by state law. The question is rather whether the search was reasonable
25 under the Fourth Amendment." *Id*. (quoting *Sibron v. New York,* 392 U.S. 40, 61 (1968)). As to
26 the Fourteenth Amendment, "minimum procedural requirements are a matter of federal law, they
27 are not diminished by the fact that the State may have specified its own procedures that it may
28 deem adequate for determining the preconditions to adverse official action." *Cleveland Board of*

1  *Education v. Loudermill,* 470 U.S. 532, 541 (1985) (cleaned up); *see also Robison v. Via*, 821 F.2d
2  913, 923 (2d Cir. 1987) ("[f]ederal constitutional standards rather than state statutes define the
3  requirements of procedural due process." (citing *Cleveland*, 470 U.S. at 540-41)). The court now
4  turns to whether the FAC states constitutional violations.

### 2. Fourth Amendment Claim

6  VWCL's Fourth Amendment claim is based on allegations that Defendants seized the
7  vehicle without a warrant, and that even if the seizure was pursuant to an "arguably legitimate
8  exception to the warrant requirement," it was unreasonable and violated the Fourth Amendment as
9  it "exceeded the scope necessary to complete any legitimate task associated with the purported
10 warrant exception for which the vehicle was seized." FAC ¶¶ 49-51.

11 "The impoundment of an automobile is a seizure within the meaning of the Fourth
12 Amendment." *Miranda*, 429 F.3d 862. "A seizure conducted without a warrant is per se
13 unreasonable under the Fourth Amendment—subject only to a few specifically established and
14 well delineated exceptions" and the government bears the burden of "persuad[ing] the district
15 court that a seizure comes under one of a few specifically established exceptions to the warrant
16 requirement." *Id.* (quoting *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001)).

17 San Mateo argues that the warrantless seizure of the vehicle was valid under the
18 community caretaker exception to the Fourth Amendment warrant requirement. It cites *South*
19 *Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976), in which the Supreme Court held that police
20 officers may remove and impound vehicles that impede traffic or "jeopardize both the public
21 safety and the efficient movement of vehicular traffic" under the "community caretaking"
22 function. According to San Mateo, it acted reasonably under the community caretaking exception
23 to the Fourth Amendment's warrant requirement by towing and storing the stolen vehicle. Mot.
24 11. However, "[w]hether an impoundment is warranted under this community caretaking doctrine
25 depends on the location of the vehicle and the police officers' duty to prevent it from creating a
26 hazard to other drivers or being a target for vandalism or theft." *Miranda*, 429 F.3d at 864. San
27 Mateo's argument goes to the merits of the Fourth Amendment claim and relies upon facts not
28 alleged in the FAC; namely, that the vehicle had been stolen and seized by San Mateo as stolen

1    property. Resolution of whether the initial seizure was reasonable under the Fourth Amendment is
2    thus not appropriate at the pleading stage.
3          San Mateo also ignores VWCL's allegations that even if San Mateo initially seized the
4    vehicle under a valid exception to the warrant requirement, "the seizure exceeded the scope
5    necessary to complete any legitimate task associated with the purported warrant exception for
6    which the vehicle was seized." FAC ¶¶ 40, 50. "It's well established that 'a seizure lawful at its
7    inception can nevertheless violate the Fourth Amendment because its manner of execution
8    unreasonably infringes possessory interests.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir.
9    2017) (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984)). Specifically, "[a]
10   warrantless seizure that was valid at its inception may become unreasonable by virtue of a delay in
11   time." *Sandoval v. Cnty. of Sonoma*, 72 F. Supp. 3d 997, 1002 (N.D. Cal. 2014) (citing *United
12   States v. Place*, 462 U.S. 696, 709-10 (1983)), *aff'd,* 912 F.3d 509 (9th Cir. 2018). *See, e.g.,
13   United States v. Dass*, 849 F.2d 414, 414-15 (9th Cir. 1988) (holding that the length of valid,
14   warrantless seizure of packages containing marijuana violated the Fourth Amendment). "To
15   determine whether a prolonged warrantless seizure was reasonable, a reviewing court will
16   'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests
17   against the importance of the governmental interests alleged to justify the intrusion.'" *Sandoval*,
18   72 F. Supp. 3d at 1009 (quoting *United States v. Sullivan,* 753 F.3d 845, 855 (9th Cir. 2014)).
19         On reply, San Mateo argues that "[t]he ongoing impoundment of the Vehicle remained
20   essential to serve the purpose of maintaining public safety by keeping a stolen and unclaimed
21   vehicle off the street," and attempts to distinguish *Brewster* on its facts. Reply 3. Again, this
22   argument fails to persuade because it rests on facts that are not part of the FAC and goes to the
23   merits of VWCL's Fourth Amendment claim. Next, San Mateo contends that "[t]he ongoing
24   impoundment was also essential until the legal owner fulfilled its financial obligation and claimed
25   the property," citing California Vehicle Code section 22851. That statute provides in relevant part
26   that "[w]henever a vehicle has been removed to a garage under this chapter and the keeper of the
27   garage has received the notice or notices as provided herein, the keeper shall have a lien dependent
28   upon possession for his or her compensation for towage and for caring for and keeping safe the

United States District Court
Northern District of California

11

vehicle . . ." Cal. Veh. Code § 22851(a)(1). To the extent that Vehicle Code section 22851 obligated VWCL to "pay for towing and impound charges before regaining possession of the vehicle" as San Mateo claims, *see* Reply 3, "statutory authorization alone does not satisfy the Fourth Amendment's requirement of reasonableness." *Sandoval*, 72 F. Supp. 3d at 1006-07 (rejecting argument that 30-day impoundment of vehicle was reasonable because it was authorized by a California Vehicle Code provision; noting "[t]he mere fact that a state has authorized a search or seizure does not render it reasonable under the Fourth Amendment." (citations omitted)).

San Mateo's motion to dismiss the Fourth Amendment claim is denied.

### 3. Fourteenth Amendment Claim

The Fourteenth Amendment's due process clause requires that individuals "receive notice and opportunity to be heard before the Government deprives them of property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)). "A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010).

VWCL's Fourteenth Amendment claim is based on the allegations that "[n]either San Mateo nor Red Line had any mechanism for, nor did either secure, review of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker," nor did they "provide[ ] VWCL an opportunity to be heard in relation to either Defendants' actions in relation to the Vehicle in any venue at any time." FAC ¶¶ 58-59. Accordingly, VWCL alleges that neither Defendant "provided VWCL with constitutionally adequate notice of that non-existent hearing procedure." *Id.* at ¶ 60. It further alleges that "[t]he manner in which VWCL became aware of San Mateo and Red Line's seizure of the Vehicle, as well as Red Line's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process." *Id.* at ¶ 61.

San Mateo does not dispute the first element of the due process claim (deprivation of a constitutionally protected property interest), but argues that under Ninth Circuit law, procedural due process "does not require pre-deprivation notice and a hearing before impoundments." Mot. 8

(citing *Miranda*, 429 F.3d at 867). It asserts that under the three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), "there was no violation of due process" based on VWCL's claim that it was not afforded a hearing prior to the seizure of the vehicle. Mot. 8-10.

In *Miranda*, the Ninth Circuit observed that caselaw "support[s] the proposition that procedural due process does not require pre-deprivation notice and a hearing before impoundments," but noted that in those cases, "the police clearly were acting within their legitimate caretaking functions." 429 F.3d at 867. As discussed above, San Mateo's argument that its seizure of the vehicle was justified under the community caretaking function relies on facts outside of the FAC. As to San Mateo's argument that it did not violate VWCL's due process rights under the *Mathews* balancing test, it does not address the portion of VWCL's claim directed at the failure to provide a *post-seizure notice* and hearing. *See* FAC ¶¶ 41, 59-60. Accordingly, the motion to dismiss the Fourteenth Amendment claim is denied.

### 4. Fifth Amendment Claim

VWCL's Fifth Amendment claim is based on the following allegations: San Mateo compensated Red Line "by turning over possession of the Vehicle to Red Line" and "interfered with VWCL's protected interests in the Vehicle . . . by turning over the Vehicle to Red Line and permitting it to assert a possessory lien that both Defendants asserted encumbered VWCL's interests and prevented VWCL from exercising its contractual possessory rights in the Vehicle." FAC ¶¶ 68, 70. Accordingly, it alleges, San Mateo took VWCL's interests in the vehicle for a public use without compensation in violation of the Fifth Amendment's takings clause. *Id*. at ¶¶ 71-73.

The takings clause provides in full: "nor shall private property be taken for public use without just compensation." U.S. Const. Amend. V. "The takings clause applies to two types of government action—the taking of physical possession of property, or of an interest in that property, for a public use and the regulatory prohibition of a private use." *Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp. 2d 890, 911 (N.D. Cal. 2013) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-23 (2002), *aff'd sub nom. Sandoval v. Cnty. of Sonoma*, 591 F. App'x 638 (9th Cir. 2015), *opinion amended and superseded on denial of*

*reh'g,* 599 F. App'x 673 (9th Cir. 2015). VWCL alleges the first type of taking.

San Mateo first argues that the takings clause is not applicable to the seizure of property pursuant to the government's police power, even if the plaintiff alleges the government acted unlawfully. *See Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330 (Fed. Cir. 2006) ("a takings claim is separate from a challenge to the lawfulness of the government's conduct: a taking does not result simply because the government acted unlawfully, nor does a takings claim fail simply because the government's conduct is subject to challenge as unlawful."). It contends that it seized the vehicle under its police power pursuant to California Vehicle Code section 22653, and as a result, VWCL cannot state a claim for violation of the takings clause. Mot. 12.

VWCL responds that in *Jenkins v. United States*, 71 F.4th 1367, 1373-74 (Fed. Cir. 2023), the Federal Circuit recently distinguished *Acadia*, the case on which San Mateo relies. In *Jenkins*, the court held that "[w]hile the United States' police power may insulate it from liability from an initial seizure, there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed for criminal proceedings." *Id*. at 1373. Therefore, "[e]ven when the initial seizure and retention of property is properly done pursuant to the police power, the police power does not insulate the government from liability for a taking if the property is not returned after the government interest in retaining the property ceases." *Id*. at 1373-74.

Once again, San Mateo's argument rests on facts about the seizure that are not alleged in the FAC. Moreover, VWCL alleges that San Mateo's seizure was unreasonable because it "exceeded the scope necessary to complete any legitimate task . . . for which the vehicle was seized," *see* FAC ¶ 50, the scenario contemplated in *Jenkins*. In its reply, San Mateo acknowledges *Jenkins* but argues that the police power exception applies here because "the need to retain the Vehicle does not end until the legal owner settles the charges" associated with the towing and storage. Reply 9 (citing Cal. Veh. Code § 22851). San Mateo does not develop this argument and offers no support for the claim that state law authorization of the retention of the vehicle pending payment of the outstanding charges immunizes it from liability under the Fifth Amendment.

14

San Mateo next asserts that VWCL cannot state a takings clause claim because it has not alleged that it attempted to obtain compensation through available state procedures. Mot. 12 (citing *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 n.13 (1985) ("because the Fifth Amendment proscribes takings *without just compensation,* no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." (emphasis in original)). San Mateo does not acknowledge that in *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167-68 (2019), the court overruled its prior jurisprudence requiring exhaustion of state remedies and held "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it."

Finally, San Mateo argues that the takings clause claim fails because San Mateo did not deprive VWCL of its due process rights, relying on its arguments in favor of dismissing the Fourteenth Amendment claim. Mot. 12. As discussed above, the court concludes that the FAC states a due process claim. Accordingly, the motion to dismiss the takings clause claim is denied.

### B. Declaratory Relief Claim

VWCL's final claim against San Mateo is for declaratory relief under 28 U.S.C. § 2201(a). The FAC alleges that "[a] judicial declaration will also serve the public interest, insofar as . . . San Mateo seizes hundreds of cars every year under the same or similar circumstances to the Vehicle, which it subjects to the same" allegedly unconstitutional policies and customs. FAC ¶ 82. It also "seeks a declaration that, to the extent Defendants seek to rely on any provisions of state or local law to justify the above-described actions, those laws are unconstitutional as applied in violation of the supremacy clause and the aforementioned constitutional rights." *Id*. at ¶ 83.

28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "This statute does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635

(9th Cir. 2014). The dispute must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation marks and citation omitted). Courts must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quotation marks and citation omitted).

San Mateo moves to dismiss the declaratory relief claim on the ground that the FAC fails to specify which state or local laws VWCL claims are unconstitutional as applied. However, it does not address the FAC's request for declaratory relief related to San Mateo's allegedly unconstitutional policies. The court concludes that the FAC contains sufficient allegations to indicate a real controversy with adverse legal interests between the parties, and to put San Mateo on adequate notice of the claim such that it can defend against it. The motion to dismiss the declaratory relief claim is denied.

## V. CONCLUSION

For the foregoing reasons, San Mateo's motion to dismiss is denied. The November 9, 2023 initial case management conference is vacated and rescheduled to December 6, 2023 at 1:30 p.m. The parties' updated joint case management conference statement is due on November 29, 2023.

**IT IS SO ORDERED.**

Dated: November 7, 2023



Donna M. Ryu
Chief Magistrate Judge

16